## L. A. WESTERMANN CO. v. DISPATCH PRINTING CO.

(Circuit Court of Appeals, Sixth Circuit.   June 22, 1916.)

No. 2663.

1. APPEAL AND ERROR ☞1009(1)—REVIEW—EQUITY SUIT—PRAYER FOR DAMAGES.

Under Copyright Act March 4, 1909, c. 326, § 27, 35 Stat. 1082 (Comp. St. 1913, § 9548), providing that all proceedings contemplated, including those for injunction, damages, profits, and for the seizure of infringing copies, may be united in one action, a proceeding to enjoin an infringement and to recover damages for the several infringements should be treated on appeal as an equity suit; the prayer for damages not changing its nature, and the parties having adopted the forms of an equity suit.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970, 3978; Dec. Dig. ☞1009(1).]

2. APPEAL AND ERROR ☞1009(1)—REVIEW—FINDINGS—EQUITY CASES.

In an equity suit, the appellate court will review questions of fact, subject to the rule that the findings of the trial court will not be lightly disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970, 3978; Dec. Dig. ☞1009(1).] ·

3. COURTS ☞356—RECORD—STATEMENT OF EVIDENCE.

Where, in an equity suit, the defeated party appealed and also brought error, and the evidence was brought up in a so-called bill of exceptions, it will, the intention being clear that it should be treated also as a statement of evidence under equity rule 75 (198 Fed. xl, 115 C. C. A. xl), be so regarded.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. ☞356.]

4. APPEAL AND ERROR ☞934(1)—REVIEW—PRESUMPTIONS.

Where defendant did not appeal, and complainant only appealed from the award of damages, claiming it inadequate, it will be presumed that the determination of the trial court that defendant was liable was correct, although such matter might be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777, 3780, 3781; Dec. Dig. ☞934(1).]

5. COPYRIGHTS ☞87—INFRINGEMENT—DAMAGES—NEWSPAPER PUBLICATIONS.

Copyright Act, § 25 (Comp. St. 1913, § 9546), declares that, if any person shall infringe a copyright, he shall be liable to pay the proprietor such damages as may have been suffered, or, in lieu of actual damages, such damages as to the court shall appear just, and in assessing damages the court may, in its discretion, allow the amounts stated, but in case of a newspaper reproduction of a copyrighted photograph, the damages shall not exceed the sum of $200, nor be less than $50, and that such damages shall in no other case exceed the sum of $5,000, nor be less than $250, which shall not be regarded as a penalty. The section supplanted prior statutes making somewhat similar provisions for award of damages. *Held* that, where the copyright proprietor did not seek actual damages, but sought those provided in lieu thereof, he was, in case of a newspaper reproduction of copyrighted drawings, entitled to at least $250 damages for the infringement.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. ☞87.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

233 F.—39

6. COPYRIGHTS &#9758;87—"INFRINGEMENT"—WHAT CONSTITUTES.

Under Copyright Act, § 25, authorizing recovery of damages for infringement, and providing that if the proprietor does not seek recovery of actual damages, he may recover in lieu thereof fixed damages for each infringement, an "infringement" will be treated as those acts, whether one or many, constituting a connected and fairly unitary invasion of the proprietor's rights.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. &#9758;87.

For other definitions, see Words and Phrases, First and Second Series, Infringement.]

7. COPYRIGHTS &#9758;87—INFRINGEMENT—DAMAGES.

The proprietor of numerous sketches showing women's styles for an approaching season, who disposed of them to the trade, contracted with a retail dealer at one town, giving him the exclusive right to reproduce any sketches which he desired in his newspaper advertising. The defendant newspaper company published advertisements for other retail dealers, reproducing such copyrighted sketches. The proprietor sued, seeking an injunction, and claimed, under Copyright Act, § 25, that the publication of each separate sketch constituted an infringement entitling him to the minimum damages provided. *Held* that, while the sketches were separately copyrighted, yet as, under the act, the notice of copyright and not registration is all-important, and separate registration would give no greater rights, the several publications constituted only one infringement, entitling the proprietor only to a single award, for the several copyrights involved a related subject-matter, and, if suits for infringement of the copyright of each picture had been brought, they would have been consolidated.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. &#9758;87.]

Appeal and Writ of Error from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit by the L. A. Westermann Company against the Dispatch Printing Company. There was a judgment awarding partial relief, and complainant appeals and brings error. Reversed and remanded, with directions.

Williams & Nash, of Columbus, Ohio, for appellant.
S. W. Bennett, of Columbus, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

DENISON, Circuit Judge. The appellant was the plaintiff below. Although a corporation, it seems to be the enterprise of Mr. Westermann, and it will be convenient to speak of him as the plaintiff. The defendant was a newspaper publishing corporation. Plaintiff was engaged at New York in the business of selling illustrations of styles for women's dress. Pursuing his long-established method of business, when the fall season of 1911 approached he employed Mrs. Westermann, as artist and designer, to observe and reproduce and to design sketches of hats and gowns, among other things, illustrative of fall styles. These sketches showed women as they would appear wearing such articles, and were artistic and attractive. The sketches were then grouped, eight or ten together, and printed upon large display sheets. Each sketch was separately deposited with the Register

of Copyrights and copyright claimed thereon; and each sketch when published in the group carried independently the copyright notice. Westermann sent these display sheets, as issued from time to time, to his mailing list of 1,200 retail dealers in women's dress throughout the United States, accompanied by an offer to sell to each dealer electroplates of any desired sketch, with the exclusive right to use it in the dealer's town. This record shows that Westermann published and distributed at least six such display sheets, two on August 15th, three on September 1st, and one on September 19th. He made a contract covering the season with Morehouse, a retail dealer at Columbus, Ohio, somewhat varying the general method of business, and whereby it was agreed that Westermann should furnish Morehouse these style sheets, and that Morehouse, in consideration of a fixed sum, should have the exclusive right in Columbus to reproduce any of these sketches which he desired to use in his Columbus newspaper advertising.

At intervals from September 19th to October 15th the defendant newspaper published six advertisements for five Columbus retailers other than Morehouse, in each one of which six advertisements there was reproduced one of the copyrighted sketches, no one being used twice. November 10th defendant reproduced in its newspaper for still another advertiser the same sketch which it had once published on October 15th. No two of these six sketches were included by plaintiff in any one of his display sheet groups.

In the court below Westermann filed his bill of complaint setting out these facts, alleging that it was impossible to show by proof the actual damages suffered, and that he elected to take and demand the alternative "just" damages given by section 25 of the Copyright Law (Act March 4, 1909, c. 320, 35 Stat. L. 1075 [Comp. St. 1913, § 9546]), asking a judgment for the maximum of $5,000 for each of the seven alleged infringing publications, and asking also an injunction.

Defendant answered; plaintiff replied; proofs were taken in open court; all of the issues were found in favor of plaintiff; and his damages were fixed at $10 for each infringement. The defendant was content; the plaintiff brought the case here on appeal and on writ of error.

[1-3] 1. The case must be treated as an equity case here on appeal. Section 27 provides that all proceedings contemplated by the act, including those for injunction, damages, profits, and for the seizure of infringing copies, etc., may be united in one action. It is easy to see that composite actions might be brought which it would be difficult to classify as between equity and law; but there is no such difficulty here. The prayer for damages, in connection with the injunction, does not at all disparage the dominant equitable character of the proceeding. The awarding of such damages is within the customary powers of a court of equity. Plaintiff adopted, and defendant accepted, all the forms of a proceeding in equity; and the suit must be so considered. It follows that we must decide the questions of fact as well as those of law involved, save that, under familiar rules, the conclusion of the trial court on questions of fact will not be lightly dis-

turbed. Although the testimony is here upon a so-called bill of exceptions, we think the intention is clear enough that it should be treated also as a statement of evidence, under equity rule 75 (198 Fed. xl, 115 C. C. A. xl); and it will be so regarded.

[4] 2. Issues as to the necessity of making Morehouse a party, as to the copyrightable character of the sketches, as to the effectiveness of the registration proceedings, and as to the sufficiency of the notice and defendant's knowledge—all were decided against defendant, and defendant has not appealed. While it would be open to us to consider such issues, because involved in any judgment for plaintiff, yet in this case we see no reason for considering them on our own motion, and in the absence of any complaint. We therefore assume that the court below was correct in these particulars, and that the only question for consideration is the one which alone the parties have presented, viz., the proper measure of damages under section 25, as applied to the facts of this case.

[5] 3. Section 25, so far as pertinent, is quoted in the margin.[1] By the clause "in lieu of" it contemplates an election or discretionary choice between actual damages and profits on the one side, and, on the other side, an assumed or somewhat arbitrary award of such damages as may be just. Plaintiff claims that the copyright proprietor is entitled to make this election, and to plant his action arbitrarily and absolutely upon one theory or the other; defendant insists that the election or the discretionary choice is to be made by the court upon the trial. The plaintiff here made the election, if he had the power

---

[1] Sec. 25. Infringement—Liability. That if any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

(a) To an injunction restraining such infringement;

(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in the case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of two hundred dollars nor be less than the sum of fifty dollars, and such damages shall in no other case exceed the sum of five thousand dollars nor be less than the sum of two hundred and fifty dollars, and shall not be regarded as a penalty:

First. In the case of a painting, statue, or sculpture, ten dollars for every infringing copy made or sold by or found in the possession of the infringer or his agents or employés;

Second. In the case of any work enumerated in section five of this act, except a painting, statue, or sculpture, one dollar for every infringing copy made or sold by or found in the possession of the infringer or his agents or employés;

Third. In the case of a lecture, sermon, or address, fifty dollars for every infringing delivery;

Fourth. In the case of a dramatic or dramatic-musical or a choral or orchestral composition, one hundred dollars for the first and fifty dollars for every subsequent infringing performance; in the case of other musical compositions, ten dollars for every infringing performance.

to do so; and on the evidence there can be no doubt that this was not a case for actual damages, as distinguished from those damages which might be fair and just, and that the court, if called upon to act, must make the same election as plaintiff did. Defendant made no profits, so far as the proofs indicated; the plaintiff's damages rested in the injury to his Morehouse contract and in the discouragement of and the tendency to destroy his system of business. To make any accurate proof of actual damages was obviously impossible. This case must therefore be treated, from any point of view, as one calling for the application of the "in lieu" portion of the statute.

4. The statute says that "such damages shall" be governed by a maximum and minimum. Whether this phrase, "such damages," and the maximum and minimum limitations, apply to the actual damages which may be proved and established under the first part of this section, or only to the "just" damages given "in lieu of actual damages," cannot be determined from mere arrangement of the language, but must depend upon more indirect interpretation. This question likewise does not directly require decision in this case. The limitations unquestionably apply to the "in lieu" damages, which are the only ones here involved; their application to actual damages may be passed over.

5. The arrangement of section 25 is awkward. In effect, the provisions for maximum and minimum immediately follow the classification, so that the statute must be treated as if it read:

"Or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may in its discretion allow $10 for every copy of a painting, etc., $1 for every copy of any other work, etc., $50 for every delivery of a lecture, etc., and $10 for every performance of musical compositions, except, etc.—but in the case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of $200 nor be less than the sum of $50, and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty."

6. We see no escape from the application of the $250 minimum in a case like this. It is difficult to think of any reason why a newspaper reproduction of a copyrighted pen and ink drawing of a hat should not be classified with a newspaper reproduction of a copyrighted photograph of similar articles; but it is not, and these sketches here involved are not photographs—though they might as well have been —and unless the word "photograph" is restricted to its established meaning, no line can be drawn; hence the $50 photograph minimum cannot apply.

It seems to us the plain meaning of the language that Congress intended that the plaintiff should not recover less than $250 damages in any copyright infringement suit not based upon a newspaper reproduction of a photograph—at least in any case where the actual damages fail to appear so clearly and so fully as to forbid resort to the "in lieu" clause. The necessary effect of the provision is to prohibit the award of merely nominal damages. This intent implies no undue harshness. Not only does the typical copyright infringement, if not every one, involve indirect damages almost sure to be considerable,

but in few cases would one sum of $250 more than compensate plaintiff for his time, trouble and expense in detecting, following up and prosecuting an infringement. It would seem that the words "shall not be regarded as a penalty" were added out of abundant caution, for under such a situation as usually exists on this subject the awarding of a round sum in damages is no more a penalty when the damages are liquidated by a court than when they are liquidated by a contract.

The act of 1909 is not new in this respect. R. S. § 4964, provided that one who unlawfully reproduced a copyrighted book should pay such damages as may be recovered in a civil action; section 4965 provided redress for infringement of copyrights other than for books, which redress consisted of "forfeiting" (one-half to the proprietor and one-half to the United States) one dollar for each infringing copy; and this section further provides, with reference to the infringement of a print, that "the sum to be recovered in any action brought through the provisions of this section shall be not less than $250"; section 4966 covers infringement of copyrighted dramatic and musical compositions, and says that the infringer "shall be liable for damages therefor, such damages in all cases to be assessed at such sum, not less than $100 for the first and $50 for every subsequent performance, as to the court shall appear to be just." This last provision was under consideration by the Supreme Court in Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109. It was held that the minimum provision was not one for a penalty, and that in default of proof of actual damages the plaintiff was at all events entitled to recover this minimum. After this construction of R. S. § 4966, the same language was adopted into section 25 of the act of 1909, although its application was extended to all copyrights; and Brady v. Daly must have the effect of a decision that under the present statute the plaintiff may recover at least the minimum.

[6] 7. When we observe that a single act in reproduction of a single copyrighted print is such an infringement as will support an action and a recovery under section 25, it is natural to assume that each such act calls for the minimum damages, and perhaps this natural assumption tends to persuade that Congress did not intend to abolish merely nominal damages (Woodman v. Lydiard-Peterson Co. [C. C. D. Minn.] 192 Fed. 67, affirmed 204 Fed. 921, 123 C. C. A. 243, 205 Fed. 900, 126 C. C. A. 434); but the conclusion is not inevitable. The "infringement" for which an action will lie is not necessarily the same "infringement" for which the minimum damages are provided. The same word may have different meanings, even in parts of the same statute, if the context and reasonable construction so require. American Co. v. District of Columbia, 224 U. S. 491, 494, 32 Sup. Ct. 553, 56 L. Ed. 856.

The language of the statute is:

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable * * * to pay * * * the copyright proprietor * * * such damages as to the court shall appear to be just," etc.

What did Congress mean when it referred to the "infringement" for which not less than $250 must be paid? The common instance, such as Congress probably had in mind, is clear. In case of an unauthorized publication of a copyrighted book, or an infringing edition of a copyrighted song, there are clearly one right and one violation, though an infringing edition may contain many copies. The statute has recognized that in some instances acts of infringement, though connected and united, may require separate treatment, and in other instances (newspaper reproduction of photographs) a number, perhaps a vast number, of acts are treated collectively as one infringement; but in still other instances the statute is wholly silent in these respects. The publishing of an edition of a thousand books is an infringement; so is the putting on sale of one of them. Using the analogy of the patent law, the manufacture and sale of one article is an infringement sufficient to support an action; yet all the conduct of the defendant in continuing the manufacture and sale over a period of years may be "the infringement" for which damages will be assessed at the end of the action. There is no corresponding damage statute in the patent law to make the analogy complete; but can it be supposed that the copyright proprietor can take each infringing act out of a series or group, because each one is sufficient to support an action, and then plant a separate action or complaint upon each, and so recover his minimum damages practically as many times as he chooses? These and other considerations convince us that the "infringement" which calls for minimum damages is that conduct of the defendant, whether being one act or many, which constitutes a connected and fairly unitary invasion of the proprietor's rights. Intermittent newspaper publication forms merely an extreme instance of difficulty in applying this definition.

[7] 8. We are on more uncertain ground when we attempt to define that right of the copyright proprietor which is contemplated by the minimum damage provision. What is meant by "the copyright in any work protected," etc.?' Here again the case of a book or musical composition is simple; but when the copyright law is used as an aid to business enterprises, other than the printing and sale of books and pictures, we find indefiniteness. Whatever may have been the rule under the former law, section 3 of the act of 1909 (Comp. St. 1913, § 9519) operates to give the proprietor the election between claiming copyright of his "work" as an entirety or by units, and, whichever way it is done, each unit is equally protected. Each one of a number of short stories may be separately copyrighted as it appears from month to month, and then they may go upon the market grouped as a book, or they may be withheld and all first' published in book form and copyrighted as an entirety, or they may be copyrighted as they serially appear, and then again in their grouped form. In any event, it is an infringement of the proprietor's rights to republish any one of the stories, and it is an infringement of his rights to republish the whole book. A furniture manufacturer may have a hundred artistic cuts or prints showing his product. He may copyright them separately and then unite them in his published catalogue, or

he may first copyright the whole catalogue, making one registration; in either event, it is an infringement of his rights to republish any one print or to republish the whole catalogue. We cannot believe that the application of the minimum damage law is controlled by that form of copyrighting, by group or by unit, which the proprietor chooses or happens to adopt. If the form of registration determines the nature of the right which is infringed, and so if it must be assumed that each impairment of a separately registered copyright is a separate infringement, it follows in the case of a catalogue that if the proprietor registers the entire at once, and if a defendant has republished the entire, the proprietor's maximum damage (at least under the "in lieu" clause) is $5,000; while if he has separately registered each one of his 100 prints, and put out the same catalogue, and the defendant has republished the same catalogue, we see that plaintiff's right is the same as before and that the defendant's infringement is the same as before, and yet the minimum damage permissible under the statute would be $25,000. While this is the first thought interpretation of the words of the law, yet we know it cannot be the real intent. The damages would have been "irrationally increased. We believe Congress meant no such result." American Co. v. District of Columbia, supra, 224 U. S. at page 495, 32 Sup. Ct. 553, 56 L. Ed. 856. If the language permits, we must find some more reasonable construction even if inconsistent with the letter. Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. We see no insuperable objection to supposing that the "copyright in any work protected," etc., may refer as well to a composite or grouped right as to each separate item of the group; and we are satisfied to interpret the statute as saying, in effect, that in any case where a party shows that a property right and interest protected by the copyright law have been invaded by the defendant, the damages (under the "in lieu" clause) must not be more or less than the stated amounts; even though the right is composite and the invasion is composite. It will follow that it must be determined by the court as a fact in each case whether one right or more than one has been impaired, and whether the acts of the defendant in taking are to be considered as one infringement or more than one.

We are somewhat fortified in this conclusion, by observing the distinct difference in theory between the old (R. S.) and the new (1909) copyright laws. Under the old law, the statutory monopoly was rested upon registration, which must be initiated on or before publication. The certificate of registration was not only evidence of title but its preliminaries constituted the final step in the otherwise incomplete statutory grant. Under the new law, the exclusive right is fixed at the instant of and by the fact of publication, with notice; the registration is incidental and may be long postponed. The publication of the complete book, with notice, perfects the right; are its character and incidents to be changed by subsequently filing the chapters separately for registry? So, the trade cuts may be put out, one each day, each with notice of copyright claim, but the only thing filed for registry may be the complete catalogue; the rights resulting from

publication would seemingly be neither enlarged nor diminished. As the registration has become more incidental and nonessential, by so far its form must have become less important in fixing substantial rights.

In determining the above-stated question of fact, the power and duty of consolidation may be useful as a test. If a plaintiff copyrights separately ten cuts, and finds each one of the ten infringed on separate days by the same newspaper, and then brings ten separate injunction and damage suits, on application to compel consolidation the court would look into the facts and ascertain whether there were really ten controversies involving ten questions or whether there was just the one dispute involving one question, and probably would consolidate or not, according as it decided this question. If these suits were consolidated upon a finding that there were really only one controversy and one injury to the plaintiff's business, or if the plaintiff in the first place brought one consolidated suit, we think it is evident that the statute may be satisfied by awarding the minimum damages as for one infringement. This construction of the law does not compel the proprietor to register all together items which he wishes to register separately. He may adopt the latter course and derive any direct or indirect advantages properly incidental; but it does not follow that one of these incidental advantages is to give the minimum damage clause an effect which could not have been intended. Nor does this construction imply that the damages for republishing a complete set of separately copyrighted books would be no more than for republishing one volume of the set. A set of books is not a unit in the same sense that one book is. The application of the law to such a case the court would determine according as it determined the facts.

We do not overlook that a proprietor who had such separate copyright registrations as are here involved might bring a suit based upon one item only, and after the first suit was finished bring another based upon another item, or he might be able to bring several simultaneously in different jurisdictions, and thus in one way or the other escape consolidation. However, it will be time to meet such a problem when it arises; situations hard to dispose of can always be imagined; the possibility of such difficulty will not prevent what seems the reasonable construction in the ordinary case.

Applying this principle to the present case, we find first that all the cuts here involved relate to a single subject, viz., fashions for women's wear for a single season; the constituent parts of such a subject are, obviously and necessarily, closely related; they comprise a unitary object and effect; the aim must be to meet the tastes of women collectively as well as separately. We find also that plaintiff had united and tied together all his six separately copyrighted cuts as completely as if he had published them only in one catalogue or one book. He had done this, so far as this case is concerned, by uniting them in a season's service which he had sold exclusively for Columbus to Morehouse. His entire business enterprise protected by copyrights was represented in Columbus by his Morehouse contract. His right, which was involved and which was impaired, was the exclusive right to

publish in Columbus this group of pictures for this season; and this was in substantial effect one right. The defendant newspaper published on several days several items of this group, but these publications were all incidents of one course of conduct; they all occurred within a short time; they ceased as soon as complaint was made. We think it reasonable to say that within the purview of this minimum damage clause they constituted one infringement.

The decree must be reversed, and the cause remanded, with instructions to enter a decree for plaintiff for two hundred and fifty dollars damages and costs and the attorney fee already fixed. The writ of error is dismissed.

We thus definitely direct the precise decree to be entered below in order that no lack of finality in our decree may embarrass any effort to take the opinion of the Supreme Court; we have considered certifying the questions, but we find our doubts hardly sufficient to justify this course.

4. COURTS ⬤➡268—FEDERAL COURTS—JURISDICTION.
    While, broadly speaking, a federal District Court is without jurisdiction of a creditors' suit brought by sureties, who had satisfied a judgment recovered in the state court of another district, the court has jurisdiction of an action at law by the sureties to recover the amount they paid.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807, 812; Dec. Dig. ⬤➡268.]

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes