S. E. HENDRICKS CO., Inc., v. THOMAS PUB. CO.

(Circuit Court of Appeals, Second Circuit. April 10, 1917.)

No. 214.

1. COPYRIGHTS ⬤═➣83—SUITS FOR INFRINGEMENT—EVIDENCE.

In a suit for infringement of a copyright, defended on the ground that plaintiff had infringed the copyright of an earlier edition of defendant's work, the testimony of a copyist formerly in plaintiff's employ, but in that of defendant until shortly before trial, in answer to a leading question, that copying had been done direct from defendant's work, was insufficient to sustain the defense, when positively denied.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76.]

⬤═➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. COPYRIGHTS ⊙⟿83—SUITS FOR INFRINGEMENT—EVIDENCE.
    Such defense was in the nature of confession and avoidance, and defendant was obliged to make good the avoidance by a fair preponderance of credible testimony.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76.]

3. COPYRIGHTS ⊙⟿87—INFRINGEMENT—DAMAGES—"ACTUAL"—"IN LIEU."
    Copyright Act March 4, 1909, c. 320, § 25, 35 Stat. 1081 (Comp. St. 1916, § 9546), requires infringers to pay such damages as the copyright proprietor may have suffered, as well as all profits made from the infringement, or, in lieu of actual damages and profits, such damages as to the court shall appear just, and provides that, in assessing such damages, the court may in its discretion allow the amounts therein fixed, which in the case of books is $1 for every infringing copy made or sold, or found in the possession of the infringer, but further provides that such damages shall in no case exceed $5,000, nor be less than $250, and shall not be regarded as a penalty. *Held* that, where obvious and substantial pecuniary injury has been caused, the court is authorized to estimate the damages within the statutory limits, without being bound by legal proof, as "actual" means real, as opposed to nominal, or existent, without precluding the thought of change, while "in lieu" means in place of the thing modified.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81.
    For other definitions, see Words and Phrases, First and Second Series, Actual; In Lieu of.]

4. COPYRIGHTS ⊙⟿87—INFRINGEMENT—DAMAGES.
    Where a substantial pecuniary injury has been caused, $250 is the minimum award.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81.]

5. COPYRIGHTS ⊙⟿87—INFRINGEMENT—DAMAGES.
    Where it appeared that defendant had sold 2,800 copies of its infringing work, which was sold in competition with plaintiff's work, an award of $2,500 as damages was not erroneous.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81.]

6. APPEAL AND ERROR ⊙⟿984(5)—REVIEW—DISCRETION—ATTORNEY'S FEES.
    Under Copyright Act, § 40 (Comp. St. 1916, § 9561), providing that in suits under that act the court may award to the prevailing party a reasonable attorney's fee, the allowance of counsel fees, being peculiarly within the discretion of the court, cannot be reviewed, unless an' abuse of discretion is shown.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3886.]

7. COPYRIGHTS ⊙⟿90—SUITS FOR INFRINGEMENT—ATTORNEY'S FEES—AMOUNT.
    Where a suit for infringement of a copyright covering a commercial directory required much labor to prove an infringement, and the trial lasted for several days, requiring an exhaustive comparison of the two books, and resulting in a judgment for plaintiff for $2,500, an award of $2,500 as attorney's fees was not an abuse of discretion.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 85.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the S. E. Hendricks Company, Incorporated, against the Thomas Publishing Company. From a decree in favor of complainant, defendant appeals. Affirmed.

The action is to restrain infringement of the copyright of one of plaintiff's publications, a book known as "Hendricks' Commercial Register, 23d Edition."

The infringement asserted consisted in defendant's copying from said Commercial Register certain matter inserted in a publication of defendant's known

⊙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as the "Thomas Register of American Manufacturers, 7th Edition." After a trial lasting for several days and an exhaustive comparison of the two books, contained in exhibits introduced in evidence and physically transmitted to this court, the trial judge found infringement. Although an appeal was taken which attacked the propriety of this decision, the question of defendant's infringement is not here raised, for (as stated in appellant's brief) "defendant does not ask this court to review the finding that defendant's work infringed upon plaintiff's."

The answer sought to raise the further defense that plaintiff was not entitled to equitable relief (notwithstanding admitted or proven infringement) because it did not come into court with "clean hands," in that plaintiff itself had copied out of the sixth edition of defendant's Register matter incorporated in "the several editions of Hendricks' Register, and more specifically in * * * the twenty-second, twenty-third and twenty-fourth editions of Hendricks' Register, instead of resorting to original sources for such information."

No effort requiring our notice was made to substantiate this allegation in respect of the twenty-second edition of Hendricks. As to the twenty-third edition (which plaintiff made the subject of this suit), the testimony of one copyist, formerly in plaintiff's employ, but in that of defendant until shortly before trial, was to the effect (in answer to a leading question) that copying had been done direct from the Thomas book into the twenty-third edition of the Hendricks publication. This testimony was positively denied, and is in our judgment wholly insufficient to sustain the defense as matter of fact.

Plaintiff's copying from defendant's sixth edition matter embodied in plaintiff's twenty-fourth edition is sought to be sustained by comparisons contained in exhibits, and tending to show that both plaintiff's and defendant's books contain the same errors. We have examined this testimony, although neither the sixth edition of defendant nor the twenty-fourth of the plaintiff is before us. The nature of the volumes published by both parties is suggested by their titles. They are directories and advertising media, arranged geographically and by occupation; each contains upwards of 1,000 pages and many thousand names, occupations, and addresses. The value of such books is to advise advertisers, customers, and sellers as to where persons and corporations can be found likely to be interested in most manufactured articles of commerce. It is amply shown that neither plaintiff nor defendant compiles its catalogue wholly by means of personal visits or correspondence, but with much assistance from lists of telephone subscribers, city directories, official registrations, and other similar publications.

Defendant's attack upon plaintiff's method of compiling its twenty-fourth edition is confined to three subdivisions of commercial activity: Millers, or makers of flour; dealers in foods (cereal, breakfast, etc.); and meat packers—an extremely small part of the lists published by both parties. It is said that in these selected portions of plaintiff's work there are found some 130 errors common to both plaintiff and defendant, from which it is urged that, since defendant's sixth edition was published before plaintiff's twenty-fourth, the errors of the later book must have been produced by copying from the former. These comparisons are the only evidence requiring mention. It is not only denied that plaintiff copied from defendant, but the origin of most of the matter complained of is given, viz. from such local or special publications as have been enumerated above, and in most (we cannot say all) instances the errors existed in the source of information sworn to on behalf of plaintiff. Nor were the exhibits of comparison introduced by defendants themselves free from error—as was developed upon cross-examination.

At the conclusion of trial it appeared that the pecuniary value of books such as those under consideration depended upon prompt distribution and use. Changes of address, business, etc., rendered new editions numerous and necessary, and by admission in open court it further appeared that defendant had distributed (presumably to subscribers) 2,800 copies of its seventh edition containing the infringing matter. Thereupon the trial court awarded $2,500 as damages under section 25 of the Copyright Act of 1909 as amended (U. S. Comp. St. 1916, § 9546), and an attorney's fee of $2,500 under section 40 of the same act (U. S. Comp. St. 1916, § 9561).

The refusal of the court below (1) to dismiss the bill because of plaintiff's alleged inequitable conduct, its action in awarding (2) so much or any damages, and (3) so large an attorney's fee, are the assigned errors here insisted on.

Hugo Mock, of New York City (Max D. Josephson and A. M. Wattenberg, both·of New York City, of counsel), for appellant.

Schechter & Lotsch, of New York City (Jacob Schechter and John L. Lotsch, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] 1. The trial court dismissed the defense of "unclean hands," because the inequitable conduct charged against plaintiff did not "affect the matter in litigation." If plaintiff did borrow from defendant's sixth edition for the benefit of its twenty-fourth edition, that act was not deemed so connected with the subject-matter of this suit, viz. infringement of the copyright of plaintiff's twenty-third edition by defendant's seventh edition, as to render the defence admissible. Bentley v. Tibbals, 223 Fed. 247, 138 C. C. A. 489. Appellant insists that this case is not within that decision, but is ruled by Edward Thompson Co. v. American Law Book Co., 122 Fed. 922, 926, 59 C. C. A. 148, 152 (62 L. R. A. 607), where we said that "an author who has pirated a large part of his work from others is not entitled to have his (own) copyright protected." Decisions are idle unless based upon the facts of the case in which they are rendered, and the facts in this case do not require consideration of the question whether the alleged wrongdoing of plaintiff herein debars it from equitable relief against the admitted wrong of defendant.

[2] Assuming the defense offered to be well pleaded (concerning which no decision is made), it set up new matter, and in the light of defendant's now admitted infringement was in effect a plea in confession and avoidance; therefore defendant was obliged to make good such avoidance by a fair preponderance of credible testimony. This has not been done. If this defense had been (as it might have been) pleaded as a counterclaim (under equity rule 30 [201 Fed. v, 118 C. C. A. v]), or been pressed by independent bill (as was also possible), such bill or counterclaim should have been dismissed on the testimony presented to us. This finding of fact disposes of the first heading of error.

[3-5] 2. That the language of the section (25) of the Copyright Act relating to the assessment of damages and profits, is "somewhat obscure" we have pointed out before. Mail & Express Co. v. Life Pub. Co., 192 Fed. at page 901, 113 C. C. A. 377, at page 378. The relevant words of the statute are that infringers shall pay "such damages as the copyright proprietor may have suffered * * * as well as all the profits which the infringers shall have made from such infringement * * * or in lieu of actual damages and profits, such damages as to the court shall appear to be just; and in assessing such damages the court may, in its discretion, allow the amounts" fixed by

the act, etc. The statute then specifies certain limits of assessment in respect of copyrighted matters not relevant to this case, and concludes:

"And such damages shall in no case exceed the sum of $5,000 nor be less than the sum of $250 and shall not be regarded as a penalty."

The same section gives plaintiff "one dollar for every infringing copy made or sold by or found in the possession of the infringer or his agents or employés" in respect of books such as are here in question.

As is well known, the language of this section is a growth of years, resulting from the efforts of Congress to avoid that strictness of construction which historically attaches to any statute inflicting penalties, and to confer upon an injured copyright owner some pecuniary solace, even when the rules of law render it difficult, if not impossible (as it often is), to prove damages or discover profits. In the Mail & Express Co. Case, supra, we held that, in respect of an infringing publication coming under the same general category as does the present one, $250 was the minimum amount to which a plaintiff could be entitled. In Gross v. Van Dyck Gravure Co., 230 Fed. 412, 144 C. C. A. 554, Hand, J., in the trial court held that the duty was by this statute laid upon the court to "estimate damages" in place of the "old penalties, * * * but to estimate them within the sums given, without the limitations of usual legal proof. The whole course of copyright law shows a recognition of the difficulty of making legal proof of damages and in substituting for rigid penalties the discretionary power of the court, we must assume that a plaintiff should not fail for lack of proof." On appeal from that construction of the statute, this court approved the method pursued.

That the statute limits the discretion of the court to a minimum award of $250 and a maximum of $5,000 in lieu of actual damages has also been held in L. A. Westerman Co. v. Dispatch, etc., Co., 233 Fed. 609, 147 C. C. A. 417 (C. C. A. 6th). In Woodman v. Lydiard, etc., Co. (C. C.) 192 Fed. 67 (affirmed on another point 204 Fed. 921, 123 C. C. A. 243, and 205 Fed. 902, 126 C. C. A. 434), Alfred Becker, etc., Co. v. Etchison, etc., Co. (D. C.) 225 Fed. 135, and F. A. Mills v. Standard, etc., Co. (D. C.) 223 Fed. 849, several District Courts have asserted a larger discretion; so that, where little or no injury appeared, even nominal damages have been awarded for proven infringement.

There may be circumstances under which discretion revolts from any award, by reason of the trivial nature of the thing copyrighted, or the slight success of attempted infringement; but the facts of this case present no such problem. That keeping plaintiff out of a possible market for 2,800 copies of its own publication, by the issuance of a book competitive in every sense of the word, works some considerable injury, is a matter too plain to require more than statement. That assessment of damages or ascertainment of profits under the facts hereinabove recited would be not only difficult but expensive is similarly obvious. We entertain no doubt that it was the intention of Congress (1) to preserve the right of a plaintiff to pursue damages and profits by the historic methods of equity if he chooses so to do; and (2)

to give the new right of application to the court for such damages as shall "appear to be just," in lieu of actual damages.

These words present no difficulty in interpretation. "Actual" means "real," as opposed to "nominal." Astor v. Merritt, 111 U. S. 213, 4 Sup. Ct. 413, 28 L. Ed. 401. It means "existent," without precluding the thought of change. Osborne v. San Diego, etc., Co., 178 U. S. 38, 20 Sup. Ct. 860, 44 L. Ed. 961. "In lieu" means in place of the thing modified by the quoted phrase. State v. Bank of Commerce (C. C.) 53 Fed. at 736. Therefore what plaintiff is entitled to ask of the court in its discretion is something in the place of his real—i. e., legally existent and legally ascertained—damages. If it had appeared that, instead of distributing 2,800 copies, defendant had issued but one, the technical infringement would still have existed, and the question been presented whether plaintiff must have $250 for nothing. Such a case has never been before us, and in the present cause experience informs the court that $250 would not and could not compensate plaintiff for a damage obvious, but difficult of exact admeasurement. It covers the matter in hand to repeat what we held in the Mail & Express Case, supra, that, where obvious and substantial pecuniary injury has been wrought, $250 is the minimum award, and to approve the above-quoted language of Hand, J., that the intent of the statute (under circumstances such as the present) was to authorize the court to estimate the damages within the statutory limits, without being bound to or by legal proof.

No error was committed in the assessment of damages herein.

[6, 7] 3. It has often been held that allowance of counsel fees is a matter peculiarly within the discretion of the court awarding the same, because that court can (and always does) proceed upon its own knowledge of the value and extent of the professional service rendered. We have lately approved this rule in Central Trust Co. v. United States, etc., Co., 233 Fed. 420, 147 C. C. A. 356. Discretionary matters are reviewable only when abuse of discretion is shown. Certainly no abuse is here demonstrated, and, having ourselves examined this record, whereof the printed testimony is far less important than the enormous and ill-digested mass of exhibits, requiring much labor to prove an infringement now admitted, we are the less inclined to disagree. There is nothing in Universal Film, etc., Co. v. Copperman, 218 Fed. 577, 134 C. C. A. 305, especially applicable to this case. In both cases the trial judge inquired as to the value in a particular litigation of the professional services rendered, and fixed them by his own knowledge of the facts and professional custom. We decline to disturb the award of counsel fees.

The decree is affirmed, with costs.